UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>OSCAR ZARAUT-CORREA,<br><br>        Petitioner. | Criminal Action No. 3:10-CR-308-13<br>Civil Action No. 3:12-CV-431 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on *pro se* Petitioner Oscar Zaraut-Correa's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 855). For the reasons set forth below, the Court DENIES the § 2255 Motion.

**I. BACKGROUND**

  **a. *Factual Background***

This case relates to Petitioner Oscar Zaraut-Correa's involvement in a Fraudulent Document Enterprise ("FDE") that specialized in selling high-quality false identification cards to illegal aliens in the United States. At the time of a nationwide takedown on November 18, 2010, the FDE had 19 cells in 11 states, including 3 in Virginia. The entire operation was supervised within the United States by Israel Cruz Millan ("Millan"), also known as "El Muerto." In each city where the organization operated, Millan placed a cell manager to supervise a number of "runners," the lower level members of the organization who distributed business cards advertising the organization's services and helped facilitate transactions with customers.

The cost of fraudulent documents varied depending on the location, with counterfeit Resident Alien and Social Security cards typically selling from $150 to $200. Each cell allegedly maintained detailed sales records and divided the proceeds between the runner, the cell

manager, and the upper level managers in Mexico.

At the time of his arrest on November 18, 2010, Petitioner worked as a runner for the Norfolk/Virginia Beach, Virginia cell. In that capacity, Petitioner sought out clients for the FDE by distributing business cards, known as "18s," which advertised his services and contact information. Petitioner would then meet with a prospective client, gather the necessary information to make a fraudulent document, and relay the information to the cell manager for the final step of printing the identification. Petitioner generated significant revenue for the FDE in the Norfolk/Virginia Beach area.

The investigation also revealed that Petitioner played a key role in the planned attack of a rival document vender in September 2010. On September 18, 2010, Petitioner and his co-defendants were preparing to assault a competitor and steal his printer. However, the assault was canceled when Petitioner and his conspirators realized that the target was closely aligned with one of the enterprise's allies.

### b. *Procedural Background*

On December 14, 2010, a federal grand jury in the Eastern District of Virginia returned the first superseding two-count indictment (ECF No. 95) against Petitioner, charging him with (1) conspiracy to possess, produce, and transfer false identification documents and possess a document-making implement, in violation of 18 U.S.C. § 1028(f) ("Count One"); and (2) money laundering conspiracy, in violation of 21 U.S.C. § 1956(h) ("Count Two"). On January 27, 2011, Petitioner pled guilty to Count One of the first superseding indictment. (*See* Plea Agt., ECF No. 144.) On August 1, 2011, this Court sentenced Petitioner to 46 months' imprisonment, followed by 2 years of supervised release. Petitioner did not appeal his sentence.

On June 12, 2012, Petitioner filed the instant § 2255 Motion. In his § 2255 Motion, Petitioner alleges two grounds for relief: [1]

---

[1] Petitioner's § 2255 Motion also contains an additional ground for relief (*see* § 2255 Mot. at 6). However, upon review of the Petitioner's supporting facts, the Court cannot discern any argument in this ground. The Government's response also notes that while Petitioner is correct that this Court was free to order

> Ground One: Ineffective assistance of counsel related to attorney's failure to take advantage of a two-level downward departure in exchange for the defendant's deportation concessions in the plea agreement
>
> Ground Two: Ineffective assistance of counsel because of counsel's failure to use the underlying guideline recommendation in the plea agreement to block the upward variance

The United States filed a response in opposition on August 16, 2012 ("Gov'ts Resp.") (ECF No. 879)[2], providing *Roseboro* notice to Petitioner (ECF No. 880), and Petitioner subsequently filed a reply on August 28, 2012 ("Reply Mem.") (ECF No. 883). The issue is now ripe for review.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, the Court generously interprets Petitioner's factual allegations and legal contentions.

## III. DISCUSSION

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both

---

Petitioner's deportation as a condition of supervised release under 18 U.S.C. § 3583(d), Petitioner fails to allege any argument in ground two. (Gov'ts Resp. at 6 n.1.) Therefore, only Petitioner's two other grounds for relief will be addressed here.

[2] The Court granted the Government's two motions for extensions of time. (*See* ECF Nos. 864, 865, 874, 877.)

that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

Petitioner's § 2255 Motion alleges ineffective assistance of counsel because: (1) counsel did not move for a two-point downward departure pursuant to former Attorney General Janet Reno's April 28, 1995 Memorandum Regarding Deportation of Criminal Aliens ("1995 Memorandum") (Gov'ts Resp., Ex. 2) and former Attorney General John Ashcroft's September 2003 Memorandum Regarding Department Principles for Implementing a Fast-Track Program ("Ashcroft Memorandum") (Gov'ts Resp., Ex. 3); and (2) counsel was ineffective for failing to use the guideline recommendation in the plea agreement to block the United States from seeking an upward variance.

//

### (1) Ground One

As to Petitioner's first ground for relief, the 1995 Memorandum issued by the former Attorney General Janet Reno provided "general overview and policy guidance" with regards to "stipulated administrative deportation in plea agreements." (*See* Gov'ts Resp., Ex. 2. at pg. 1.) "To obtain such stipulations, prosecutors *may* agree to recommend a one or two level downward departure from the applicable guideline sentencing range in return for the alien's concession of deportability and agreement to accept a final order of deportation." (*Id.* at pg. 2) (emphasis added). As the Government's response suggests, the 1995 Memorandum did not create a mandatory policy. Rather, the use of the word "may" clearly intended for the policy to be discretionary. Moreover, the Government submits that this policy has not been adopted by the Eastern District of Virginia in resolving its cases. (Gov'ts Resp. at 9.) Therefore, Petitioner cannot establish that his counsel's performance fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 687, as any request for a downward departure would have been flatly rejected. Because Petitioner cannot satisfy the *Strickland* standard, *see id.* at 697, his claim must be denied.

Moreover, Petitioner's argument regarding the Ashcroft Memorandum and the "fast track" program must also fail. As Judge Payne described in *United States v. Hernandez-Montealegre*, 445 F. Supp. 2d 646 (E.D. Va. 2006),

> Fast-track programs began informally in districts along the Mexican border, where district courts were increasingly overwhelmed by high caseloads related to immigration violations. To alleviate this burden, federal prosecutors engaged in charge-bargaining and agreed to move for downward departures in return for expedited guilty pleas. Congress formally sanctioned such early disposition programs in the Prosecutorial Remedies and Tools Against the Exploitation of Child Today Act of 2003 ("PROTECT Act") . . . , in which it authorized the Attorney General to create and implement programs to aid jurisdictions overwhelmed by high caseloads related to a particular offense or category of offenses. Congress also directed the Sentencing Commission to promulgate a policy statement authorizing a departure of not more than four levels in cases where the United States moved for a downward departure pursuant to an early disposition program. The Commission complied in U.S.S.G. § 5K3.1.

445 F. Supp. 2d at 658. The Ashcroft Memorandum "sets forth the general criteria that must be satisfied in order to obtain Attorney General authorization for 'fast-track' programs and the procedures by which U.S. Attorneys may seek such authorization." (Gov'ts Resp., Ex. 3, at pg. 1.) The Ashcroft Memorandum specifies that "these programs are reserved for exceptional circumstances." (*Id.*) Although the Deputy Attorney General authorized fast-track programs in 13 districts for illegal reentry offenses under 8 U.S.C. § 1326, "no such early disposition program has been authorized in the Eastern District of Virginia." 445 F. Supp. 2d at 659. Because fast-track programs are not recognized in the Eastern District of Virginia, *id.*, Petitioner cannot demonstrate that counsel's failure to request a downward departure based on the Ashcroft Memorandum fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. Any such request would have been "flatly rejected." (Gov'ts Resp. at 12.) Therefore, Petitioner's first ground for relief must be denied.

  *(2) Ground Two*

  In his second ground for relief, Petitioner claims that counsel was ineffective because counsel failed to take any action in blocking the upward variance at sentencing. In response, the Government argues that Petitioner's claim lacks merit because the United States abided by the terms of the plea agreement and Petitioner's counsel could not have argued that the agreement prohibited the upward variance. (Gov'ts Resp. at 13.)

  The plea agreement provided the following:

> The United States will recommend to the Court that:
>
> 1. The applicable guideline section for the charge contained in Count One of the Indictment is USSG § 2L2.1.
>
> 2. The total offense level for the offense charged in Count One should be 17 based on the following calculations:
>
>    - The base offense level under USSG § 2L2.1 is 11, plus 9 additional levels under USSG § 2L2.1(b)(2)(C) because the defendant's conduct involved over 100 fraudulent documents.

6

- The defendant timely notified the authorities of his intention to plead guilty in this matter, entitling him to a 3-level reduction for acceptance of responsibility under § 3E1.1.

(Plea Agt., ECF No. 144 at ¶ 3.) The plea agreement specifically noted that "[t]he defendant understands that these agreements are merely recommendations and are not binding on the sentencing judge." (*Id.*) The plea agreement further noted,

> The defendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum described above but the Court will determine the defendant's actual sentence in accordance with 18 U.S.C. § 3553(a). The defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range under the U.S. Sentencing Commission's Sentencing Guidelines Manual . . . is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court. Additionally, pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the Court, after considering the factors set forth in 18 U.S.C. § 3553(a), may impose a sentence above or below the advisory sentencing range . . . .

(*Id.* at ¶ 5.)

At sentencing, the United States abided by the plea agreement, and informed the Court that "[a]s [Petitioner] stands before the Court today, he is at an Offense Level of 17, a Criminal History Category of 1. The range is 24 to 30 months." (Sentencing Tr. at 2:14–17; ECF No. 878.) Defense counsel agreed with the Government's calculation, and noted that he did not have "any objections, corrections, or amendments to the Presentence Report as offered." (*Id.* at 3:16-20.)

However, after the recommended guideline range was established, the Government argued for an upward variance, specifically requesting a term of 48 months' imprisonment. (*See* ECF No. 314; *see also* Sentencing Tr. at 2:18–19.) The Court heard arguments from both the Government and defense regarding the factors outlined in 18 U.S.C. § 3553(a).[3] (Sentencing Tr.

---

[3] 18 U.S.C. § 3553(a) defines factors to be considered in imposing a sentence. Such factors include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

at 3–10.) The Court ultimately granted in part the Government's motion, varying upward four levels, and thus amending the Guidelines Range to 37 to 46 months. (*Id.* at 11:4–7.) The Court then sentenced Petitioner within that Guidelines Range, (*id.* at 11:7–8), to 46 months' imprisonment, (*id.* at 11:17).

With these facts in mind, Petitioner's instant claim is without merit. The plea agreement only established the recommended guidelines range, which the Court accepted at sentencing. The agreement did not prohibit the Government from seeking an upward variance. Indeed, the agreement explicitly noted that "the Court, after considering the factors set forth in 18 U.S.C. § 3553(a), may impose a sentence above or below the advisory sentencing range . . . ." (*Id.* at ¶ 5.) The variance inquiry under § 3553(a) is entirely separate from the guidelines calculation. *See United States v. Susi*, 674 F.3d 278, 282 (4th Cir. 2012).

The Government thus abided by the terms of the plea agreement, and was entitled to file an upward variance motion. Although defense counsel attempted to argue that Petitioner was a low-level participant and should be sentenced at the low end of the guideline range set forth in the Presentence Report–24 to 30 months, (*see* Sentencing Tr. at 9:23–10:25), counsel could not further challenge the Court's decision to grant the upward variance. Any other objections "that the United States had breached the plea agreement, or otherwise trying to use the recommended guidelines range to block the upward variance, would have been futile under these circumstances." (Gov'ts Resp. at 15.) Because Petitioner cannot carry his burden of proving counsel's performance fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 687, his second ground for relief must also be denied.

## IV.    CERTIFICATE OF APPEALABILITY

A district court that enters a final order denying a § 2255 motion must grant or deny a

---

(3) the kinds of sentences available;
. . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Petitioner is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, the Court hereby DENIES the § 2255 Motion and DENIES a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to the *pro se* Petitioner and all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___10th___ day of June 2015.